568 A.2d 991

**William S. HANSON, Appellant,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Nov. 17, 1989.

Decided Jan. 9, 1990.

500

Harvey S. Miller, Windolph, Burkholder, Stainton and Gray, Lancaster, for appellant.

Michael B. Sutton, Deputy Atty. Gen., with him, Calvin R. Koons, Sr. Deputy Atty. Gen., John G. Knorr, III, Chief Deputy Atty. Gen., Chief of Litigation Section, and Ernest D. Preate, Jr., Atty. Gen., for appellee.

Before CRAIG and McGINLEY, JJ., and BARBIERI, Senior Judge.

CRAIG, Judge.

William S. Hanson appeals an order of Judge Morgan of the Court of Common Pleas of Dauphin County dismissing Hanson's employment discrimination claim against the Department of Transportation (DOT) and denying his request for reinstatement, back pay and lost benefits under section 5(a)[1] of the Pennsylvania Human Relations Act. We affirm.

The record indicates that Hanson began working for DOT as a traffic engineer in 1969. On June 28, 1984, as a result of a reduction in force, DOT furloughed Hanson from his position as a traffic planning technician.

[1] Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. § 955(a).

In September of 1984, a custodial position in DOT's Motor License Section became available. On September 19, 1984, James Dunn, the section's manager, Geraldine Taylor, the section's custodial supervisor, and Wayne Ginder, Taylor's supervisor, interviewed Hanson for the position.

During the interview, Hanson stated that he experienced a lingering foot injury. Specifically, Hanson had three previous orthopedic operations performed on his right foot and had a history of foot pain occurring with prolonged standing or walking.

Dunn stressed that the custodial position required prolonged standing and walking, along with other physical demands. Hanson stated that he wanted the job, and despite his foot ailment, would give it his best try.

Hanson began working as a custodian on September 28, 1984, and immediately experienced foot problems. Taylor attempted to accommodate Hanson's ailment by assigning strenuous tasks to other custodians.

On October 9, 1984, Hanson experienced foot pain and left work before the completion of his shift. Hanson received treatment for his ailment from Dr. Hasz, his family physician, and Dr. Goodman, a disability specialist. Both physicians concluded that because of his lingering foot problems, Hanson should quit his custodial job and find a sedentary position.

Because of Hanson's ailment, Dunn arranged an interview for him with Linda Eskin, Manager of the Receiving Section. On October 22, 1984, Hanson interviewed with Eskin for a clerical position in her department. After discussing the department's rules with Eskin, including sick leave rules, Hanson indicated that he was not interested in the position.

On November 9, 1984, Hanson returned to work. Hanson submitted a letter from Dr. Hasz stating that he suffered from some type of lingering foot injury, possibly tarsel

tunnel syndrome. However, Dr. Hasz permitted Hanson to return to work.

Hanson continued his custodian position with DOT until January 4, 1985. On that date, Hanson phoned Taylor, his supervisor, and Deborah Najdek, a personnel clerk. Hanson stated to them that due to his foot ailment, he could no longer work as a custodian. Najdek asked Hanson if he was resigning, and Hanson stated "do what you have to do." Because Hanson did not request to be put on sick leave, DOT treated his statement as a voluntary resignation.

Hanson later requested that DOT grant him disability benefits. To enable him to receive disability benefits, DOT reinstated Hanson on sick leave without pay. After applying for disability benefits, Hanson submitted his signed resignation.

On February 16, 1985, Hanson began receiving disability and medical insurance benefits. Hanson has never applied for another job with the Commonwealth. After leaving his custodian position, Hanson has performed a variety of jobs outside of Commonwealth employment.

On January 13, 1986, Hanson filed a writ of summons in the Court of Common Pleas of Lancaster County.[2] Hanson then filed his complaint on July 8, 1986. Because of improper venue, the Lancaster County court transferred the action to Dauphin County. The Dauphin County court held a non-jury trial on the matter on August 31, 1988 and September 1, 1988.

On November 30, 1988, the trial judge issued his findings of fact and order denying Hanson's request for relief under section 5(a) of the Act.

2. Hanson originally filed a complaint with the Pennsylvania Human Relations Commission under the Act for failure to accommodate his disability. The Commission dismissed the complaint, stating that no probable cause existed to support Hanson's allegations of unlawful discrimination against DOT. Hanson then filed the present action pursuant to section 12(c) of the Act, 43 P.S. § 962(c).

 Hanson appealed the order to the Superior Court, which transferred the case to this court.[3]

Our scope of review is limited to determining whether competent evidence supports the trial court's findings and whether the trial court committed any errors of law. *Department of Transportation, Bureau of Driver Licensing v. Monaghan*, 115 Pa.Commonwealth Ct. 248, 539 A.2d 940 (1988).

### 1.

Hanson first contends that the trial court erred in concluding that he voluntarily resigned his position with DOT.

---

3. On April 26, 1989, the Superior Court *sua sponte* transferred this action to our court, citing section 762(a)(1) of the Judicial Code (Code), 42 Pa.C.S. § 762(a)(1). Although neither party raised the issue, we question whether the law specifically confers jurisdiction in this matter upon this court.

Section 12(c) of the Act, which vests jurisdiction in the courts of common pleas when the Commission dismisses a complaint or fails to take action within one year, outlines no procedure for appeals from the courts of common pleas.

In his brief, Hanson also relies on section 762(a)(1) of the Code to support this court's jurisdiction.

However, because our appellate jurisdiction under section 762(a)(1) of the Code is limited to Commonwealth civil cases where original jurisdiction is vested in another tribunal by virtue of any of the exceptions to the Commonwealth Court's original jurisdiction under section 761(a)(1) of the Code, 42 Pa.C.S. § 761(a)(1), and because this case does not fit into any of those exceptions, we conclude that section 762(a)(1) vests no appellate jurisdiction in the Commonwealth Court in this matter.

Nevertheless, because DOT did not object to our jurisdiction upon the Superior Court's transfer, jurisdiction in this court will be treated as perfected, and we will proceed to review the merits of the appeal, as allowed by section 704(a) of the Code, 42 Pa.C.S. § 704(a). *See Borough of West Chester v. Lal*, 493 Pa. 387, 426 A.2d 603 (1981).

We note that *Mansfield State College v. Kovich*, 46 Pa.Commonwealth Ct. 399, 407 A.2d 1387 (1979) and *School District of Philadelphia v. Friedman*, 96 Pa.Commonwealth Ct. 267, 507 A.2d 882 (1986) have procedural histories similar to this case. In *Mansfield*, the commission failed to resolve the case within one year, and the employee began an action in the trial court. In *Friedman*, which is procedurally identical to this case, the commission found that no probable cause existed, and the employee began an action in the trial court. Those cases do not discuss our appellate jurisdiction in the matter.

Instead, Hanson contends that DOT "discharged" him in violation of section 5(a) of the Act.

Section 5(a), in relevant part, states as follows:

**Unlawful discriminatory practices**

It shall be an unlawful discriminatory practice....

(a) For any employer because of race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or *disability* of any individual to refuse to hire or employ, or to bar or *to discharge from employment* such individual, or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment, if the individual is the best available and most competent to perform the services required ... (Emphasis added.)

In an employment discrimination case involving an alleged employee dismissal, the employee bears the burden of establishing a prima facie case. *School District of Philadelphia v. Friedman*, 96 Pa.Commonwealth Ct. 267, 507 A.2d 882 (1986). One element of a prima facie case is proving that an actual "discharge" occurred.

The Act does not define the term "discharge." However, section 1903(a)[4] of the Statutory Construction Act states that "[w]ords and phrases shall be construed according to ... their common and approved usage...."

The term "discharge" is generally defined as "to release, to dismiss, or to terminate the employment of a person." Black's Law Dictionary 416 (5th ed. 1979).

This court has similarly interpreted the terms "discharge" and "voluntary resignation" in the context of unemployment compensation law. For a "discharge" to occur, the employer's language or actions must possess the immediacy and finality of a firing. On the other hand, a "voluntary resignation" occurs when an employee, without any action by the employer, resigns, quits or leaves employment. *Maines v. Unemployment Compensation Board of*

4. 1 Pa.C.S. § 1903(a).

*Review,* 110 Pa.Commonwealth Ct. 601, 532 A.2d 1248 (1987).

In concluding that DOT did not "discharge" Hanson, the trial court relied chiefly on Hanson's phone calls to Taylor and Najdek on January 4, 1985, described above.

■ According to the trial court record, DOT took no action to terminate Hanson from his position as custodian. In fact, the record reveals that Hanson's actions constituted a voluntary resignation. Because of Hanson's actions, we conclude that DOT did not "discharge" him in violation of section 5(a) of the Act.

### 2.

■ Hanson next contends that DOT's actions constituted a "constructive discharge" under the Act, citing *Young v. Southwestern Savings and Loan Association,* 509 F.2d 140 (5th Cir.1975) [applying Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1)] to support his contention.

In *Young,* the court outlined the standard for a "constructive discharge" as follows:

> The general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee.

*Young v. Southwestern Savings and Loan Association,* 509 F.2d at 144.

We find no Pennsylvania case law on "constructive discharge." However, even under a "constructive discharge" standard, nothing in the record indicates that DOT deliberately created intolerable working conditions which forced Hanson to involuntarily resign. The facts show that Hanson received accurate advance knowledge concerning the

requirements of the custodial position and his own limitations.

Moreover, DOT made limited accommodations for Hanson's physical needs by assigning duties to other custodians. Thus, no "constructive discharge" occurred.

Because competent evidence supports the trial court's determination that Hanson voluntarily resigned his position with DOT and was not "discharged" under section 5(a), we conclude that Hanson has failed to prove a prima facie case of employment discrimination under the Act.

Because Hanson did not prove a prima facie case of employment discrimination by DOT, we need not address Hanson's other contention, that DOT failed to accommodate his handicap under section 5(a).

Accordingly, we affirm Judge Morgan's order.

## ORDER

NOW, January 9, 1990 the order of the Court of Common Pleas of Dauphin County, No. 561 S 1987, dated November 20, 1988, is affirmed.